| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06-cr-00080-JAW |
| | ) | |
| MARK MCCURDY | ) | |

## ORDER ON DEFENDANT'S FIRST AND SECOND MOTIONS FOR LEAVE TO FILE SUPPLEMENTAL PLEADINGS AND ON DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE

Mark McCurdy, an inmate now serving a 210 month federal sentence for being a felon in possession of a firearm, brought this habeas corpus petition on August 4, 2011, to vacate his conviction. The original petition claimed four grounds for relief: three based on ineffective assistance of counsel, and one based on prosecutorial misconduct. Along the way Mr. McCurdy has filed, among other things, two Motions for Leave to File Supplemental Pleadings, seeking to add two new grounds—both related to ineffective assistance of counsel—to the original four. The Court granted Mr. McCurdy leave to file these pleadings but has not ruled on the merits of any of Mr. McCurdy's six grounds for relief. Now before the Court is the habeas petition, twice supplemented. Also before the Court is a Motion for Leave to Request Discovery. The Court denies the habeas petition and denies without prejudice the Motion for Leave to Request Discovery.

## I.    LEGAL STANDARD

### A.    Federal Habeas Corpus Relief Under § 2255

Title 28 U.S.C. § 2255 (2012) empowers a federal district court to vacate, set aside, or correct a sentence imposed by any federal court in violation of the Constitution or laws of the United States.  However, the Court considering the petition may dismiss it without an evidentiary hearing "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  R. GOVERNING § 2255 PROCEEDINGS 4(b) (Habeas Rule 4(b)).  The prisoner bears a heavy burden to demonstrate entitlement to an evidentiary hearing.  *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003).

Section 2255 has a one-year limitations period.  § 2255(f).  Four events can start the limitation period running, of which two are relevant here: "the date on which the judgment of conviction becomes final," *id.* § 2255(f)(1), or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  *Id.* § 2255(f)(4).  A judgment becomes final, for purposes of § 2255(f)(1), on the date the Supreme Court denies certiorari to the petitioner or when the time for seeking certiorari expires.  *In re Smith*, 436 F.3d 9, 10 & n.1 (1st Cir. 2006) (per curiam).  The latest in time triggering event is used to measure the limitations period.  § 2255(f).

"Federal Rule of Civil Procedure 15 governs amendments to habeas petitions in a § 2255 proceeding."  *United States v. Ciampi*, 419 F.3d 20, 23-24 (1st Cir. 2005).  An "otherwise untimely pleading amendment . . . [may] 'relate back' to the date of

the timely-filed original pleading provided the claim asserted in the amended plea 'arose out of the *conduct, transaction, or occurrence* set forth or attempted to be set forth in the original pleading.'" *Id.* at 23 (quoting FED. R. CIV. P. 15(c)(2)) (emphasis in original). However, the First Circuit instructs habeas courts to strictly construe the "relate back" provision in § 2255 proceedings. *Id.* The proposed amendment must relate to the "same core facts" as the original petition, and "not depend upon events which are separate both in time and type from the events upon which the original claims depended." *Id.*

## B.     Sixth Amendment Ineffective Assistance of Counsel

The Supreme Court has defined a two part test for ineffective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is only constitutionally deficient if it falls below an "objective standard of reasonableness," *id.* at 688, and there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 694. Judicial scrutiny of counsel's conduct is "highly deferential" and will presume that it "'falls within the wide range of reasonable professional assistance.'" *United States v. Bucuvalas*, 98 F.3d 652, 658 (1st Cir. 1996) (quoting *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)). Put another way, counsel's performance will be deemed ineffective only if the attorney fails to pursue an argument that is "so obvious and promising that no competent lawyer could have failed to pursue it." *Arroyo v. United States*, 195 F.3d 54, 55 (1st Cir. 1999).

## II.     FACTS

### A.     Procedural Posture

The procedural history of this habeas petition is tortuous.  A federal jury convicted Mr. McCurdy of possession of a firearm by a felon on December 31, 2008.[1] *Jury Verdict* (ECF No. 148).  After the verdict, on January 26, 2009, Mr. McCurdy pro se moved for new trial, *Def.'s Pro Se Mot. for New Trial* (ECF No. 155), and on July 7, 2009, the Court denied the motion.  *Order Denying Mot. for New Trial* (ECF No. 188).  On July 21, 2010, the Court sentenced Mr. McCurdy to 210 months incarceration, three years supervised release, and a $100 special assessment.  *J.* (ECF No. 195).  Mr. McCurdy appealed to the Court of Appeals for the First Circuit on July 31, 2009.  *Notice of Appeal* (ECF No. 197).  On November 16, 2010, the First Circuit affirmed, *United States v. McCurdy*, No. 09-2101 (1st Cir. Nov. 16, 2010), and on March 21, 2011, the Supreme Court denied Mr. McCurdy's petition for a writ of certiorari.  *McCurdy v. United States*, 131 S. Ct. 1714 (2011) (mem.).

On April 8, 2011, Mr. McCurdy moved again for new trial based on a claim of newly-discovered evidence involving Stephen John Cheney, a Government trial witness, and Mr. McCurdy demanded an evidentiary hearing.  *Def.'s Pro Se Mot. for New Trial* (ECF No. 224).  He also moved for discovery and for production of documents.  *Def.'s Pro Se Mot. for Disc. Of Materials Related to Elec. Surveillance of*

---

[1]     Mr. McCurdy was indicted on November 15, 2006.  *Indictment* (ECF No. 1).  On October 9, 2007, Mr. McCurdy pleaded guilty to being a felon in possession of a firearm.  *Minute Entry* (ECF No. 57).  During the preparation of the presentence report, the Probation Office discovered that Mr. McCurdy's prior convictions could qualify him for Armed Career Criminal status.  Consequently, on May 2, 2008, the Court allowed him to withdraw his plea of guilty.  *Order Granting Mot. to Withdraw Guilty Plea* (ECF No. 74).

*Def.* (ECF No. 227); *Def.'s Pro Se Mot. for Produc. Of Docs.* (ECF No. 228). On November 9, 2011, the Court issued an exhaustive order denying his motions. *Order Denying Def.'s Mots. for New Trial, Disc., and Production* (ECF No. 250). On November 21, 2011, Mr. McCurdy appealed that Order to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 251).

Meanwhile, on August 4, 2011, Mr. McCurdy filed this habeas petition. *Mot. Under § 2255 to Vacate, Set Aside, or Correct Sentence* (ECF No. 240) (*Petition*). After several extensions, the Government moved for summary dismissal of the petition on December 20, 2011. *Gov't's Mot. for Summ. Dismissal* (ECF No. 260) (*Motion*). Mr. McCurdy replied in opposition to the Motion to Dismiss on January 6, 2012. *Pet'r's Reply to Gov't's Resp. to § 2255 Mot.* (ECF No. 261).

Two and a half months later, on March 16, 2012, Mr. McCurdy moved the Court for permission to file a supplemental pleading to present an additional ground for relief. *Mot. for Leave to File Supplemental Pleading* (ECF No. 262); *Pet'r's Supplemental Pleading to 28 USC § 2255 Mot.* (ECF No. 263) (*First Supplemental Pleading*). On March 19, 2012, the Court granted leave to file the pleading. *Order Granting Mot. for Leave to File Supplemental* Pleading (ECF No. 264). The Government filed a response to Mr. McCurdy's supplemental pleading on May 9, 2012, arguing that Mr. McCurdy's then-pending appeal of the Court's denial of a separate motion for a new trial stripped the Court of jurisdiction to permit amendment of the habeas petition. *Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* (ECF No. 267). On April 11, 2012, the Court issued an

order granting the Government's motion to stay the habeas proceedings until the resolution of Mr. McCurdy's appeal. *Order Staying 28 U.S.C. § 2255 Mot.* (ECF No. 268). On April 23, 2012, Mr. McCurdy moved for reconsideration of the order, and on June 5, 2012, the Court reconsidered the order but affirmed it. *Order on Mot. for Recons.* (ECF No. 271). Mr. McCurdy's habeas petition remained stayed pending his appeal to the First Circuit. *Id.* at 2.

Despite the stay order, on May 19 Mr. McCurdy replied to the Government's opposition to his supplemental pleading. *Pet'r's Reply to Gov't's Resp. to Supplemental Pleading* (ECF No. 269). He also moved for leave to request discovery and for discovery on September 17, 2012, despite the stay. *Def.'s Mot. for Disc.* (ECF No. 273). On September 21, 2012, the Court dismissed these last two motions without prejudice because they violated the stay order. *Order* (ECF No. 274).

On October 23, 2012, in a brief Judgment, the First Circuit denied Mr. McCurdy's appeal. *United States v. McCurdy*, No. 11-2368 (1st Cir. Oct. 23, 2012) (ECF No. 275). This Court received the First Circuit's Mandate on November 28, 2012. *Mandate* (ECF No. 279).

While the Court awaited the mandate, on November 9, 2012 Mr. McCurdy moved the Court for permission to file a second supplemental pleading, including his proposed sixth ground for relief. *Mot. for Leave to File Second Supplemental Pleading* (ECF No. 277); *Pet'r's Second Supplemental Pleading* (ECF No. 277-1) (*Second Supplemental Pleading*). After the First Circuit returned jurisdiction to this Court on November 28, 2012, the Court granted Mr. McCurdy permission to file

his second supplemental pleading on November 29, 2012. *Order Granting Mot. for Leave to File Supplemental Pleadings* (ECF No. 280). Three months later, after several extensions granted to the Government, Mr. McCurdy filed a "supplemental memorandum" in response to the Government's original motion for summary dismissal. *Pet'r's Supplemental Mem. in re Gov't's Resp. to § 2255 Mot.* (ECF No. 294) (Feb. 12, 2013). A week later the Government responded to the second supplemental pleading and the "supplemental memorandum" in one brief. *Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* (ECF No. 296). Mr. McCurdy replied to the Government's response on March 21, 2013. *Pet'r's Reply to Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* (ECF No. 298).

One final strand of motions, related to the habeas petition, must be addressed. On March 21, 2013, Mr. McCurdy revived a dormant motion for leave to file a discovery request against the Government, seeking to compel production of records "held by the Machias Police Dept. concerning Mark McCurdy." *Second Mot. for Leave to Request Disc.* (ECF No. 299); *Second Mot. for Disc.* (ECF No. 299-1). The Government opposed the substance of the discovery motion on March 25, 2013. *Gov't's Objection to Def.'s Second Mot. for Disc.* (ECF No. 300). Mr. McCurdy replied to the objection on May 8, 2013. *Pet'r's Reply to Gov't's Objection to Def.'s Second Mot. for Disc.* (ECF No. 302).

### B.    Facts Relevant to the Habeas Petition

When evaluating a petition for the writ of habeas corpus, a court may consider the motion itself, the attached exhibits, and the record of the proceedings. Habeas Rule 4(b). Where the petition is presented to a court already familiar with

the defendant, the court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *McGill*, 11 F.3d at 225.

### 1.    Events on March 27, 2006

Early on the morning of March 27, 2006, Deputy Jonathan Rolfe of the Washington County Sheriff's Department was dispatched to a report of a domestic assault at Mr. McCurdy's residence in Whiting, Maine. *Motion* Attach. 3 *Washington County Sheriff's Patrol/Investigations* at 2 (ECF No. 260) (*Rolfe Report*). According to Deputy Rolfe, he instructed the dispatcher to send Deputy John Fuller to the residence as well, since it would take Deputy Rolfe some time to arrive. *Id.* The complainant, Mr. McCurdy's girlfriend Paula Sawtelle, told the police dispatcher that Mr. McCurdy had assaulted her, that her son John Cheney had intervened, and that Mr. McCurdy had a knife and firearms in the house.[2] *Id.*; 1 *Trial Proceedings* at 149, *United States v. McCurdy*, No. 06-CR-80-B-W (ECF No. 209) (1 *Trial Tr.*). While Deputy Rolfe was en route, the dispatcher informed him that Mr. McCurdy had left the residence, and that Officer Alan Curtis of the Machias Police Department had pulled Mr. McCurdy over on a road in Machias. *Id.*; *Pet'r's Second Supplemental Pleading* Attach. 5 *Machias Police Dep't Narrative*

---

[2]      Mr. McCurdy disputes some of the Court's factual findings related to this episode from his suppression hearing. For instance, he claims that Mr. Cheney assaulted him "brutally" and without any cause. *Compare, e.g., United States v. McCurdy*, 480 F. Supp. 2d 380, 383 (D. Me. Mar. 26, 2007) *with Pet'r's Reply to Gov't's Resp. to § 2255 Mot.* at 10 (ECF No. 261) *and Pet'r's Reply to Gov't's Resp. to Mot. for Leave to File Second Supplemental Pleading* at 7 (ECF No. 298). Mr. McCurdy's version is consistent with his statement to Deputy Rolfe, *Rolfe Report* at 1, but inconsistent with the testimony of Mr. Cheney. 1 *Trial Proceedings* at 206-10. The Court is not required to revisit its earlier factual findings at this stage, nor is it required to give deference to Mr. McCurdy's version of disputed facts, as it would in deciding a motion for summary judgment.

*Report* at 1 (ECF No. 277) (*Curtis Report*). Deputy Rolfe drove to where Officer Curtis had detained Mr. McCurdy and questioned him about the domestic dispute. *Rolfe Report* at 2; *Curtis Report* at 1. Meanwhile, Deputy Fuller had arrived at the residence to secure the scene. *Tr. of Proceedings on Motion to Suppress* at 35 (ECF No. 205) (*First February Suppression Hearing*).[3] Officer Curtis arrested Mr. McCurdy for possession of drug paraphernalia, but took him to the hospital for treatment for his injuries before transporting him to Washington County Jail. *Curtis Report* at 1. Deputy Rolfe went to Mr. McCurdy's home to investigate further. *Rolfe Report* at 2.

Officer Curtis's report records a slight variation on these events, of which Mr. McCurdy makes much. According to Officer Curtis's report, following the stop of Mr. McCurdy's car Officer Curtis interviewed Mr. McCurdy "while waiting for Deputy Jack Fuller to arrive." *Curtis Report* at 1. Then, "[a] few moments later Deputy Fuller arrived." *Id.* According to Officer Curtis, "Deputy Fuller took mark [sic] aside" while Officer Curtis searched the car. *Id.* Furthermore, Officer Curtis was of the opinion that "Deputy Fuller and [Deputy] Rolfe were handling the domestic part of this incident, but still needed to speak with the victim." *Id.* In other words, in Officer Curtis's report Deputy Fuller had not yet gone to the McCurdy residence when Deputy Rolfe first encountered Mr. McCurdy at the traffic

---

[3]     This Court held a total of three hearings on Mr. McCurdy's motion to suppress: on February 8, 2007; on February 16, 2007; and on September 16, 2008. The February 16 hearing was a continuation of the February 8 hearing. In 2008, the Court permitted Mr. McCurdy to re-open his suppression hearing because of newly discovered evidence. *United States v. McCurdy*, No. CR-06-80-B-W (D. Me. July 3, 2008).

stop. In this respect Officer Curtis's report disagrees slightly with Deputy Rolfe's report. Another witness, Scott Huckins, also testified at the September 2008 suppression hearing that Officer Rolfe arrived at Mr. McCurdy's residence first. *Tr. of Proceedings on Motion to Suppress* at 12-13, 20 (ECF No. 207) (*September Suppression Hearing*).

At Mr. McCurdy's home, Deputy Rolfe interviewed Ms. Sawtelle and Mr. Cheney. *Id.* According to Deputy Rolfe, Ms. Sawtelle and Mr. Cheney both told Deputy Rolfe that Mr. McCurdy was a felon and there was a gun in the house, *Rolfe Report* at 2-3, though Ms. Sawtelle and Mr. Cheney later disagreed as to whether she only knew this because Mr. Cheney had told her. *Pet'r's Reply to Gov't's Resp. to § 2255 Mot.* Attach. 6 *Continuation Report* (ECF No. 261) (*Rolfe Continuation Report*). At the home, Mr. Cheney, with Ms. Sawtelle's consent, voluntarily led Deputy Rolfe to a rucksack containing a military harness with several loaded magazines, and a rifle case. *Rolfe Report* at 3; *First February Suppression Hearing* at 34, 37-39 (testimony of Deputy Rolfe); *id.* at 83-89 (testimony of Ms. Sawtelle); 1 *Trial Tr.* at 211-14 (testimony of Mr. Cheney). Deputy Rolfe seized the rucksack and the case. 1 *Trial Tr.* at 125-27.

On the way to the hospital, Officer Curtis of the Machias Police Department informed Mr. McCurdy of his *Miranda* rights. *Id.* Mr. McCurdy claims in the Petition that in response to the *Miranda* warnings he stated: "Yeah, I want a lawyer." *Petition* at 5. However, Mr. McCurdy does not supply any citation to the

record to back up this claim, and Deputy Rolfe's police report states only that Officer Curtis thought that Mr. McCurdy "understood his rights." *Rolfe Report* at 3.

After interviewing Ms. Sawtelle and Mr. Cheney, Deputy Rolfe went to the hospital to interview Mr. McCurdy. *Id.* At the hospital, Deputy Rolfe's report documents the following exchange that occurred after he learned that Mr. McCurdy had been read his *Miranda* rights:

> I asked Mark if he had anything to add and he shook his head no. I asked him if he had the key to the gun case [found in Mr. McCurdy's attic] and he said he didn't know what I was talking about. I asked him if the case and ammo [found in the rucksack] was his and he shook his head no. I asked him if he knew the firearm was in his house and he would only stare at me and not answer one way or the other.

*Id.* After Mr. McCurdy received medical treatment, Deputy Rolfe transported him to jail and charged him with domestic assault. *Id.* Deputy Rolfe then opened the gun case and found a complete Colt AR-15 .223 rifle, what he then thought was an M203 gas grenade launcher,[4] and an upper .223 caliber rifle assembly. *Id.* There were also two loaded magazines in the case. *Id.* The harness contained nine fully loaded magazines and two rounds for the "grenade launcher." *Id.*

## 2. Events During Mr. McCurdy's Trial

Mr. McCurdy claims, without citation to any evidence, that Brent McSweyn[5] arranged to have the bank accounts of Scott Huckins frozen before and during Mr.

---

[4]      It turned out that the "grenade launcher" was actually a flare launcher. 3 *Trial Proceedings* at 129-30, *United States v. McCurdy*, No. 06-CR-80-B-W (ECF No. 211).

[5]      Although he does not say so, the Court assumes that Mr. McCurdy is referring to Special Agent Brent McSweyn of the Bureau of Alcohol, Tobacco, Firearms and Explosives, who testified at his trial. 2 *Trial Proceedings* at 103, *United States v. McCurdy*, No. 06-CR-80-B-W (ECF No. 210).

McCurdy's trial. *Petition* at 9. This, claims Mr. McCurdy, "made it financially impossible for Huckins to appear and testify for McCurdy." *Id.*

Mr. McCurdy also claims that Mr. Cheney attempted to extort Oxycontin tablets from him in exchange for giving testimony favorable to Mr. McCurdy at his trial. *Petition* at 2; *Order Denying Def.'s Mots. For New Trial, Disc., and Production at 4-17 (ECF No. 250) (Order Denying New Trial)*. Mr. McCurdy, through Attorney Silverstein, produced during trial (but outside the jury's presence) a series of taped phone conversations between Mr. Cheney and Mr. McCurdy that might have proved this. *Id.* at 2-9. After Attorney Silverstein and Assistant U.S. Attorney Joel Casey reviewed the tapes together, neither attorney attempted to introduce the tapes into evidence. *Id.* at 9. In its order denying Mr. McCurdy's motion for a new trial, the Court noted that Mr. Silverstein's cross-examination of Mr. Cheney about the tapes was "very brief[]." The Court further observed:

> If Mr. Silverstein had set out Mr. McCurdy's specific allegations in a series of specific questions to Mr. Cheney, Mr. Cheney would have been pushed to respond with more detail. Assuming the truth of Mr. McCurdy's allegations [of extortion], Mr. Cheney may have admitted his attempted extortion if faced with tough and specific cross-examination. If he did not, defense counsel could have represented to the Court that there was a missing tape recording and sought a continuance to locate it. But Mr. Silverstein did not.

*Id.* at 33-34 (footnote omitted). The Court later denied Mr. McCurdy a new trial on the grounds of newly discovered evidence. *Id.* at 34-48. Among its reasons for this denial were that "[e]ven discounting some portion of Mr. Cheney's testimony based on his odd telephone comments, the Government's case would still likely have resulted in conviction" based on other incriminating evidence. *Id.* at 47.

After the jury found Mr. McCurdy guilty, the Court sentenced him to 210 months in prison. *J.* (ECF No. 195) (July 21, 2009). The Court calculated Mr. McCurdy's sentencing range under the U.S. Sentencing Guidelines after determining that he qualified as an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (2006) (ACCA). *Tr. of Sentencing Proceedings* at 38 (ECF No. 208) (July 20, 2009) (*Sentencing Hr'g*). This raised Mr. McCurdy's base offense level under the Guidelines from 24 to 33. *Id.* The Court determined that Mr. McCurdy was an armed career criminal, in part, using two convictions for robbery from 1984. *Petition* at 8. In the first of these two convictions, the Washington County Superior Court imposed sentence for four counts of burglary on May 14, 1984, but stayed execution of the sentence until June 1, 1984. *J. and Commitment* (ECF No. 260-4) (May 14, 1984) (*Burglary Sentence*). The Superior Court imposed the sentence for the second conviction on June 1, 1984. *J. and Commitment* (ECF No. 260-5) (June 1, 1984) (*Robbery Sentence*). This Court also used those convictions, in part, to determine that Mr. McCurdy had a criminal history category of V. *Sentencing Hr'g* at 38.

## III.  DISCUSSION

### A.  The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence

#### 1.  "Counsel's Failure to Notice and Raise [Obvious] *Miranda* Violations Constituted Ineffective Assistance"

##### a.  Position of the Parties

Mr. McCurdy claims that Deputy Rolfe's questioning of Mr. McCurdy at the hospital, following Officer Curtis's administration of the *Miranda* warning en route,

constituted a violation of the Fifth Amendment, and that Attorney Silverstein's representation was ineffective because he failed to raise this issue at the suppression hearing. *Pet'r's Mem. of Law in Support of 2255 Mot.* at 2-7 (ECF No. 240-1) (*Pet'r's First Mem.*). In Mr. McCurdy's view, his alleged statement "Yeah, I want a lawyer" in Officer Curtis's cruiser on the way to the hospital invoked his privilege against self-incrimination. *Id.* at 3. He also asserts that his refusal to answer some of Deputy Rolfe's questions at the hospital was a further assertion of the privilege. *Id.* at 4.

In support of these contentions, Mr. McCurdy first cites *Edwards v. Arizona*, 451 U.S. 477 (1981). There, the Supreme Court held that "a valid waiver of [the] right [against self-incrimination] cannot be established by showing only that [the defendant] responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. Mr. McCurdy further directs the Court to *Arizona v. Roberson*, 486 U.S. 675 (1988) in which the Supreme Court held that police could not interrogate a suspect as to a second, unrelated offense without providing counsel, even though the officer asking the questions was not aware the suspect had requested counsel. *Id.* at 686-88. *But see Davis v. United States*, 512 U.S. 452, 459-60 (1994) (holding that the request for counsel must be clear and unequivocal). Questioning is "interrogation" when "the police should know [that it] is reasonably likely to evoke an incriminating response from a suspect." *United States v. Jackson*, 544 F.3d 351, 357 (1st Cir. 2008) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). Finally, Mr. McCurdy cites *Miranda v. Arizona*, 384

U.S. 4236 (1966), itself for its sweeping condemnation of interrogation following a suspect's request for a lawyer:

> The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

*Id.* at 444-45; *but see Davis*, 512 U.S. at 459-60.

Mr. McCurdy points out that the statements he made to Officer Rolfe—specifically his claim that he knew nothing about the gun case—were the basis on which the Court concluded that Mr. McCurdy had abandoned any expectation of privacy in the case. *Pet'r's First Mem.* at 5 (citing *McCurdy*, 480 F. Supp. 2d at 391). Furthermore, the statements were used at trial, *id.*, and were one ground on which the First Circuit affirmed this Court's denial of Mr. McCurdy's motion to suppress. *McCurdy*, No. 09-2101, at 1.

The Government counters that nowhere in the record, other than in the Petition itself, is there any evidence that Mr. McCurdy actually said: "Yeah, I want a lawyer." *Motion* at 21. The Government further notes that the Court has repeatedly rejected the credibility of similar claims from Mr. McCurdy. *Id.* at 21-22. "To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." *David v. United States*, 134 F.3d 470, 478 (1st Cir. 1998). A petitioner should not receive an evidentiary hearing if "his allegations are 'vague, conclusory, or palpably incredible,' . . . even 'if the record does not conclusively and

expressly belie [the] claim.'" *Id.* (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

In the alternate, the Government contends that Mr. McCurdy also fails both prongs of the *Strickland* test for ineffective assistance of counsel. First, as to the "objective standard of reasonableness," *Strickland*, 466 U.S. at 688, the Government argues that Attorney Silverstein's tactical choice to focus his suppression efforts on the tangible evidence rather than the statements was reasonable. *Motion* at 22-23. In the Government's view, competent counsel would know that even if the statements were not admissible at trial, they would be admissible in the suppression hearing. *Id.* at 23 (citing *United States v. Matlock*, 415 U.S. 164, 172-74 (1974) (holding that apart from questions of privilege, the Federal Rules of Evidence do not apply at suppression hearings)). Further, competent counsel would know that the statements would in any event be admissible to determine whether Mr. McCurdy had a reasonable expectation of privacy in the seized items. *Id.* at 23-24.

Likewise, the Government contends that competent counsel would not have objected to the admission of the statements at trial because, in fact, the denials of possession were consistent with the defense's theory that Mr. McCurdy did not know about or possess the firearms. *Id.* at 24. Furthermore, the First Circuit has held that material evidence derived from an otherwise voluntary statement, taken in violation in *Miranda*, is admissible. *Id.* at 24-25 (citing *United States v. Faulkingham*, 295 F.3d 85, 91-94 (1st Cir. 2002)). Finally, the Government

interprets Mr. McCurdy's first head shake—in response to Deputy Rolfe's query whether he "had anything to add"—to be an answer to the question, not a renewal of his alleged earlier invocation of his *Miranda* rights.

Mr. McCurdy expands on his *Miranda* arguments in a portion of his Supplemental Memorandum, but his arguments there are essentially variations on the same theme. *See Pet'r's Supplemental Mem. in re Gov't's Resp. to § 2255 Mot.* at 1-5. The Court read and considered them.

### b.    Analysis

Mr. McCurdy's contention that his trial attorney failed to raise an alleged *Miranda* warning violation depends, of course, on there being such a violation. Mr. McCurdy relies heavily on his own unsupported assertion that he said "Yeah, I want a lawyer" after Officer Curtis gave him the *Miranda* warnings on the way to the hospital. Other than Mr. McCurdy's say-so, there is no evidence that this ever took place and the extended history of this thoroughly-litigated case strongly suggests otherwise.

First, Officer Curtis' report does not mention that Mr. McCurdy asserted the right to counsel. *Curtis Report* at 1-2. Second, Deputy Rolfe's report confirms that Officer Curtis read Mr. McCurdy his *Miranda* warnings but does not mention any assertion of the right to counsel. *Rolfe Report* at 3 ("At the ER, Officer Curtis advised Mark had been read Miranda and that he understood those rights"). Third—despite this obvious reference to the *Miranda* warnings—during the long and contentious pre-trial, trial, and post-trial proceedings, Mr. McCurdy failed to mention his asserted right to counsel until he raised it in this habeas petition filed

nearly five years after the indictment. Specifically, during the pretrial phase of the case, Mr. McCurdy filed two motions to suppress evidence and the Court took evidence on three separate days, issuing two orders. Mr. McCurdy's alleged demand for counsel was never mentioned, Officer Curtis was never called as a witness, and even though a number of suppression arguments were made, the alleged *Miranda* warning violation was never suggested. This issue never came up during the trial of the case. Post-trial, Mr. McCurdy did not mention the issue in his January 26, 2009 motion for new trial, in his counsel's March 16, 2009 motion for new trial, in his appeal of his conviction, or in his April 8, 2011 motion for new trial. Despite his careful scrutiny of the legal issues in this case, the very first time Mr. McCurdy claimed that Officer Curtis and Deputy Rolfe violated his *Miranda* rights was when he filed this habeas petition on August 4, 2011, after countless motions, affidavits, arguments and orders. A habeas petitioner cannot simply conjure up facts ex post facto to justify his petition. *David*, 134 F.3d at 478; *Machibroda*, 368 U.S. at 495. This alone is enough to deny the first ground for relief.

Moreover, assuming that he demanded an attorney while en route to the hospital, Mr. McCurdy's verbal and physical cues at the hospital are in no sense a clear, unequivocal invocation of the *Miranda* right. *Davis*, 512 U.S. at 459-60. According to Deputy Rolfe's report, he merely asked Mr. McCurdy whether he had anything to add and Mr. McCurdy shook his head, "no". *Rolfe Report* at 3.

Furthermore, Attorney Silverstein could have made a very reasonable tactical decision not to object to admission of these statements at trial because they were, in fact, highly beneficial to Mr. McCurdy's own defense. A significant component of Attorney Silverstein's theory of the case, which he pressed in his closing argument, was that Mr. Cheney planted the gun in the attic for his own nefarious purposes. 3 *Trial Proceedings* at 26-44, *United States v. McCurdy*, No. 06-CR-80-B-W (ECF No. 211) (3 *Trial Tr.*). Mr. McCurdy's hospital statements are entirely consistent with this theory of defense. After all, at the hospital, when asked about the weapon, Mr. McCurdy said he did not know what Deputy Rolfe was talking about and stared blankly when asked further questions. The evidence of the hospital statements—and the choice not to object to its admission—is consistent with a reasonable theory of defense. A habeas petition is not a vehicle to second guess a reasonable, but ultimately unsuccessful, trial strategy.

Furthermore, even if failing to object to admission of the statements were objectively unreasonable, it is extraordinarily unlikely that their admission had any negative effect on the outcome of the trial for Mr. McCurdy. Mr. McCurdy has not argued that his hospital statements, such as they were, were in fact involuntary—only that he had asked for an attorney. But material evidence derived from an otherwise voluntary statement, even in violation in *Miranda*, may be admissible. *Faulkingham*, 295 F.3d at 91-94. Moreover, Mr. McCurdy's hospital statements did not go to, and the Government did not offer them to prove, any element of the crime.

To the contrary, the statements tended to negate the knowledge element of the crime.

In sum, even assuming that Mr. McCurdy did request a lawyer while riding in Officer Curtis's cruiser, Mr. McCurdy meets neither element of the *Strickland* test for ineffective assistance of counsel. Attorney Silverstein made reasonable tactical choices regarding Mr. McCurdy's statements at the hospital, and, even if not reasonable, the statements did not prejudice Mr. McCurdy. The Court will not grant habeas relief on the first ground.

> 2.    **"The Failure of Counsel to Object to the Introduction of Illegally Obtained Evidence at Trial Constituted Ineffective Assistance"**

> a.    **Position of the Parties**

Mr. McCurdy contends that Attorney Silverstein's failure to object to the introduction of the black rucksack recovered at his house was also constitutionally deficient. First, he disputes that Deputy Rolfe had consent from either Ms. Sawtelle or Mr. Cheney to open the rucksack. He cites *Matlock* for the proposition that "[c]ommon authority . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes." 415 U.S. at 171. He also directs the Court to a Sixth Circuit case in which the Circuit Court wrote that "where the circumstances presented would cause a person of reasonable caution to question whether the third party has mutual use of the property, 'warrantless entry without further inquiry is unlawful[.]'" *United States v. Waller*, 426 F.3d 838, 846 (6th Cir. 2005) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990)). He then asserts that all other statements that he made after Deputy Rolfe laid hands on the

rucksack are inadmissible because "[t]here was no break in the chain of events from Rolfe's illegal search of the rucksack at McCurdy's home to his questioning of McCurdy at the Emergency Room concerning the items resulting from the illegal search." *Pet'r's First Mem*. at 9. Because the Government introduced the material evidence from the rucksack at trial, Mr. McCurdy claims that Attorney Silverstein's failure to object is unreasonable and worked a prejudice against him. *Id*. at 9-10.

The Government points out that this issue was, in fact, raised and litigated at two separate suppression hearings, both of which the Court decided against Mr. McCurdy. *Motion* at 27.

### b.  Analysis

Mr. McCurdy makes no discernible attempt to deny that Mr. Silverstein did attempt to suppress the evidence in and derived from the rucksack, and the Court ruled against him.[6] The Government made this point simply, and the Court has verified it independently by reviewing its prior decision on the original motion to suppress. *McCurdy*, 480 F. Supp. 2d. Attorney Silverstein did his best for Mr. McCurdy, but did not prevail. "[T]he fault for the failure of the suppression claim to succeed does not lie with [Mr. McCurdy's] counsel's performance. Rather, the claim failed because it was unsupported by facts or law." *Motion* at 27.

---

[6]     To the extent that Mr. McCurdy is arguing that Attorney Silverstein should have attempted to suppress the statements Mr. McCurdy made at the hospital following Deputy Rolfe's search and seizure of the rucksack, the Court has already addressed the argument.

### 3. "Counsel's Failure to Notice and Present to the Court the Fact that Petitioner's Prior Sentence[s] Were Imposed on the Same Day Constituted Ineffective Assistance"

#### a. Position of the Parties

Mr. McCurdy contends that Attorney Silverstein overlooked the fact that "[s]entences were imposed in two of [Mc. McCurdy's] prior countable offenses on the same day, June 1, 1984." *Petition* at 8. He submits that the two offenses at issue—a burglary conviction and a robbery conviction—should have been analyzed as "concurrent sentences" and not treated as two separate sentences. *Pet'r's First Memo.* at 10-11. Under U.S.S.G. § 4A1.2(a)(2), he argues, he should have been assessed three criminal history points instead of six. *Id.* at 11. This resulted in him receiving a Guideline sentencing range of 210-262 months rather than 188-235 months. *Id.* He contends that this alleged oversight by Attorney Silverstein is unreasonable, prejudicial error. *Id.* at 10.

The Government makes two points in reply. First, it claims, as a factual matter Mr. McCurdy was not sentenced on both counts on the same day; rather, he was sentenced for the burglary convictions May 14, 1984, but execution was stayed until June 1. *Motion* at 29. On June 1, 1984, Mr. McCurdy was sentenced for the robbery convictions. *Id.* Thus, the Government argues, Mr. McCurdy was sentenced on two separate dates, but was allowed to begin serving his time for the two sentences on the same date. *Id.*

Second, the Government claims that Attorney Silverstein's performance at sentencing was not unreasonable because he did, in fact, dispute the sufficiency of the ACCA predicate offenses from several different angles. *Id.* at 29-30. In his

objections to the Presentence Investigation Report, Attorney Silverstein argued unsuccessfully that two of the predicates were both too old to be counted and constituted the same conduct. *Id.* at 30. Likewise, at sentencing, Attorney Silverstein argued that the burglary convictions were not "violent felonies" for the purpose of the ACCA and that the robberies were not committed on occasions different from each other. *Id.* This, in the Government's view, shows that Attorney Silverstein made every reasonable effort to lower Mr. McCurdy's Guideline range. *Id.* Furthermore, Mr. McCurdy could not have been prejudiced by Attorney Silverstein's failure to raise the supposedly identical dates on the two sentences because, even if the two convictions had been counted as one unit, Mr. McCurdy's 210 month sentence was still within the lower range. *Id.* at 30-31.

### b. Analysis

The ground lacks merit on the factual basis that the robbery and burglary sentences were imposed on different days. The version of U.S.S.G. § 4A1.2(a)(2) found in the 2009 edition of the Sentencing Guidelines states: "If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." The 2008 version is identical in substance. Mr. McCurdy does not allege that the robbery and burglary sentences arose from the same charging instrument, only that they were imposed on the same day. *See Petition* at 8; *Pet'r's First Memo.* at 10-11. But the Superior Court judgments clearly show that the judgments were imposed on separate days. *Compare Burglary Conviction* (dated May 14, 1984) *with Robbery Conviction* (dated

June 1, 1984).  It happens that the Superior Court stayed execution of the Burglary Conviction until June 1, but this does not change the fact that it imposed the sentence on May 14.  Attorney Silverstein cannot have acted unreasonably by failing to make a legally incorrect argument.

Mr. McCurdy's third ground is no cause for habeas relief.

### 4. "Prosecutorial Misconduct Involving the Procurement of the Absence of a Witness"

#### a. Position of the Parties

Mr. McCurdy asserts, without evidentiary support, that "[p]rosecution team member, Brent McSweyn, had defense witness Scott Huckins' bank account frozen before and during McCurdy's trial.  This made it financially impossible for Huckins to appear and testify for McCurdy."  *Petition* at 9.  Mr. McCurdy's argument in support of this claim begins with a discussion of other alleged prosecutorial misconduct, unrelated to Mr. Huckins.  *Pet'r's First Memo.* at 12-13.  When he turns his attention to Mr. Huckins, Mr. McCurdy asserts, again without evidentiary support, that Mr. Huckins informed him at a chance meeting that "[Mr. Huckins'] debit card had been frozen and the person to contact was Brent McSweyn."  *Id.* at 13.  According to Mr. McCurdy, Mr. Huckins claimed that this was the reason that Mr. Huckins did not testify at Mr. McCurdy's trial.  *Id.* at 13.

For legal authority, Mr. McCurdy cites *United States v. Ballesteros-Acuna*, 527 F.2d 928 (9th Cir. 1975).  In that case, the Ninth Circuit held that the Government committed no harm when it permitted a blind, elderly man, witness to the defendant's misconduct but apparently innocent of any wrongdoing himself, to

return to his home.  *Id.* at 929-30.  The defendant later could not locate the witness. *Id.* at 929.  The Ninth Circuit did state that "the Government is 'under no obligation to look for' a defendant's 'witnesses, in the absence of a showing that such witnesses were made unavailable through the suggestion, procurement, or negligence' of the Government."  *Id.* at 930 (quoting *Ferrari v. United States*, 244 F.2d 132, 141 (9th Cir. 1957)).

The Government, in an abundance of caution, directs several pages of briefing at Mr. McCurdy's ancillary complaints about AUSA Casey's closing argument and Deputy Fuller's non-receipt of a subpoena.  *Motion* at 32-33.  As to Mr. Huckins—the subject of the fourth ground of the § 2255 petition—the Government notes that Mr. McCurdy had the right to subpoena Mr. Huckins to testify at his trial.  *Id.* at 33.  Had he done so, Mr. Huckins would have been compelled to appear, financial troubles or no.  *Id.*  The Government also observes that the Court had already expressed its incredulity at Mr. Huckins' suppression hearing testimony, and that his weakness as a witness likely explains Attorney Silverstein's decision not to call him to the stand.  *Id.*  Furthermore, the Government argues, Mr. McCurdy cannot have suffered any prejudice from the absence of Mr. Huckins because he had not previously testified about Mr. McCurdy's knowing possession of a firearm.  *Id.*

### b.    Analysis

First, the Court will not address Mr. McCurdy's ancillary complaints of misconduct by AUSA Casey and Deputy Fuller.  These were not part of the habeas petition, and they are not an element of Mr. McCurdy's claim.

Contrary to the Government's final argument, it is conceivable that Mr. Huckins could have had something new to say about Mr. McCurdy's knowing possession of a firearm. The fact that he did not testify on this subject at the suppression hearing does not mean that his testimony would have been so limited at trial. However, in all other respects the Government is correct. Mr. McCurdy had access to the legal tools to compel Mr. Huckins to appear and testify, and he chose not to use them. There is no evidence that Mr. Huckins' financial troubles somehow stood in the way of a defense-initiated subpoena.

The fourth ground of the petition does not claim ineffective assistance of counsel. However, to be consistent with its rebuttal of the other claims against Attorney Silverstein, the Court agrees with the Government that there were very good reasons not to call Mr. Huckins to the stand. If the fourth ground had mentioned ineffective assistance, the Court would have concluded that Attorney Silverstein's decision not to call Mr. Huckins was well within *Strickland* standards.

In sum, the Court declines to grant habeas relief on Mr. McCurdy's fourth ground.

5. **"Defense Counsel Failed to Properly Utilize Available Evidence to Impeach the Government's Primary Witness and That Constituted Ineffective Assistance of Counsel"**

a. **Position of the Parties**

Mr. McCurdy quotes the Court's November 9, 2011 order denying his motion for a new trial for the proposition that Attorney Silverstein was constitutionally deficient for not pressing Mr. Cheney more closely on the recorded phone calls. Specifically, he argues that

> [t]he Court determined sua sponte that Defense Counsel's
> representation of McCurdy was lacking when it stated the following in
> its November 9, 2011 [order]. "If Mr. Silverstein . . . had set out Mr.
> McCurdy's specific allegations in a series of specific questions to Mr.
> Cheney, Mr. Cheney would have been pushed to respond with more
> detail. Assuming the truth of Mr. McCurdy's allegations, Mr. Cheney
> <u>MAY</u> have admitted his attempted extortion if faced with a tough and
> specific cross-examination. . . . But, Mr. Silverstein did not."

*First Supplemental Pleading* at 2 (quoting *Order Denying Def.'s Mots. For New Trial, Disc., and Production* at 33 (ECF No. 250) (Nov. 9, 2011) (*Order Denying New Trial*)). Mr. McCurdy claims that this is prejudicial because, as the Court noted in the same order, "Mr. Cheney was the only witness who actually put the firearm in Mr. McCurdy's hands during the applicable statute of limitations period." *Id.* (quoting *Order Denying New Trial* at 47).

For authority, Mr. McCurdy cites *González-Soberal v. United States*, 244 F.3d 273 (1st Cir. 2001). That case, involving defense counsel's failure to impeach two government witnesses with documentary evidence, bears some facial similarity to Mr. McCurdy's case. Contrary to Mr. McCurdy's characterization, however, the First Circuit did not determine that "trial counsel provided ineffective assistance by failing to use [the] two pieces of documentary evidence to impeach the government's two chief witnesses," *First Supplemental Pleading* at 2; rather, the First Circuit held that the district court applied the wrong standard of review in its *Strickland* analysis. *González-Soberal* at 277, 279. After concluding that the question of prejudice was a close one, the First Circuit vacated the district court's denial of the habeas petition and remanded for reconsideration under the correct standard of review. *Id.* at 279.

The Government's only response to the fifth ground for relief is that it is untimely, but this appears to be correct only as to the second supplemental pleading—the sixth ground for relief. *Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* at 4-6 (ECF No. 296). The Supreme Court denied certiorari in Mr. McCurdy's case on March 21, 2011. Mr. McCurdy filed his first supplemental pleading on March 16, 2012. By the Court's count, Mr. McCurdy filed the first supplemental pleading with five days to spare. It is not untimely.

**b. Analysis**

The Government directs no argument to the substance of the fifth ground for relief—the claim that Attorney Silverstein was ineffective because he did not heavily cross-examine Mr. Cheney on the tapes. *See id.* However, no argument is needed on this point because the Court, in its order denying a new trial, already determined that Attorney Silverstein's failure to impeach Mr. Cheney was reasonable. As the Court explained in its extended November 9, 2011 Order Denying Motion for New Trial, if Mr. Silverstein had pressed Mr. Cheney about the contents of the tapes, this evidence could have badly backfired against Mr. McCurdy:

> Under *Old Chief v. United States*, 519 U.S. 172 (1997), the jurors did not know Mr. McCurdy had been convicted of four violent felonies, each involving the robbery of a pharmacy: two May 14, 1984 convictions and two June 1, 1984 convictions. The jury did not know the latter two convictions involved Mr. McCurdy's use of a firearm, and they did not know Mr. McCurdy had a significant history of drug abuse that began when he was thirteen years old and included abuse of oxycodone. In addition, the record does not reflect what Mr. Cheney actually knew about Mr. McCurdy's other activities during the years Mr. McCurdy and Ms. Sawtelle were friendly.

If Mr. Silverstein had aggressively cross-examined Mr. Cheney, this tactic could have backfired on the defense. Backed into a corner, Mr. Cheney may well have volunteered information about Mr. McCurdy's activities explaining why Mr. Cheney made him the target of prescriptive drug extortion. This potential might explain why Mr. Silverstein was so cagey in questioning Mr. Cheney. Even if this evidence did not come out on cross-examination, if the defense opened the door, the Government would likely have been able to introduce some or all of it during its redirect examination of Mr. Cheney. *See United States v. Joost*, 133 F.3d 125, 128 (1st Cir. 1998) ("A party who opens a door cannot be heard to complain that the adverse party strolled through the doorway."). The net result may well have been that the jury had more reason to convict Mr. McCurdy.

*Order Denying New Trial* at 39-40.

It was also not prejudicial. To put the passage that Mr. McCurdy quotes in its proper context:

Even discounting some portion of Mr. Cheney's testimony based on his odd telephone comments, the Government's case would still likely have resulted in conviction based on Mr. McCurdy's use of a straw man to purchase the firearm in 2001, the alterations to the firearm that the Court discussed in its July 8, 2009 Order, Mr. McCurdy's retrieval of the firearm from Ms. Hayward for a bogus reason, the firearm's presence in Mr. McCurdy's attic, its configuration in the firearms case, the ratcheting of the shoulder harness, and Mr. Cheney's testimony, to the extent the jury believed it. Mr. McCurdy is correct that Mr. Cheney was the only witness who actually put the firearm in Mr. McCurdy's hands during the applicable statute of limitations period. But it is also true that Mr. Cheney's testimony was consistent with the other evidence of Mr. McCurdy's possession of the firearm.

*Id.* at 47. In other words, Attorney Silverstein's failure to introduce the tapes to discredit Mr. Cheney is not likely to have changed the outcome. Thus, Mr. McCurdy cannot meet either prong of the *Strickland* test. The Court declines to grant relief on the fifth ground.

### 6. "Defense Counsel Failed to Properly Utilize Available Evidence to Impeach Another Key Government Witness and That Constituted Ineffective Assistance of Counsel"

#### a. Position of the Parties

Mr. McCurdy argues that Attorney Silverstein should have used the discrepancies between the Rolfe Report and the Curtis Report to discredit Deputy Rolfe. *Second Supplemental Pleading* at 2-3. These discrepancies go to the locations of Deputy Rolfe and Deputy Fuller in the time between the traffic stop and the search of the McCurdy residence: the Rolfe Report has Deputy Fuller arriving at the McCurdy residence first, followed by Deputy Rolfe, while the Curtis Report has Deputy Rolfe making the first appearance. *Id.* at 2; *compare Rolfe Report with Curtis Report*. Mr. McCurdy goes on to make further accusations of impropriety against AUSA Casey for having the Curtis Report in its possession but "allow[ing] Deputy Rolfe to testify falsely." *Second Supplemental Pleading* at 3-4.

Mr. McCurdy takes a different angle on these arguments in his Supplemental Memorandum, mounting his own direct attack on the credibility of Deputy Rolfe's testimony. *Pet'r's Supplemental Memorandum in re Gov't's Resp. to § 2255 Mot.* at 5-8. He argues that Mr. Huckins' testimony aligns with the Curtis Report, and that this shows that "Mr. Huckins was inherently truthful." *Id.* at 6. He uses this assertion to mount a collateral attack on the Court's second denial of Mr. McCurdy's suppression motion. *Id.* at 5-6. Specifically, he argues that the Curtis Report redeems the truthfulness of Mr. Huckins, whose credibility the Court discounted in its second denial of the motion to suppress because it conflicted with the dispatcher's log and Deputy Rolfe's testimony. *Id.* at 6 (quoting critically *United*

*States v. McCurdy*, 585 F. Supp. 2d 136, 143 (D. Me. Nov. 13, 2008)). Mr. McCurdy then renews his attacks on the Court's impartiality, *id.* at 7, and finally faults Attorney Silverstein for not raising all of these issues "<u>SIX</u> years ago." *Id.* The Court takes from Mr. McCurdy's count of years that he is referring to events in 2007, the year the Court heard argument on his first suppression motion.

The Government offers three rejoinders. First, it argues that Mr. McCurdy's second pleading is untimely. *Gov't Resp. to Mot. for Leave to File Supplemental Pleading* at 4-6 (ECF No. 296). In the Government's view, the second supplemental pleading, stating the sixth ground for relief, is barred by the one-year statute of limitations of 28 U.S.C. § 2255(f) because Mr. McCurdy filed it nineteen months after the United States Supreme Court denied certiorari in his case. *Id.* The Government concedes that § 2255(f)(4) starts this period running on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"; however, it claims that Mr. McCurdy could, with due diligence, have known of the Curtis Report "well before he filed his supplemental pleadings" for two reasons. *Id.* First, Mr. McCurdy made three requests to the Machias police department for documents prior to the second supplemental pleading, showing that he knew of its existence.[7] *Id.* Second, Attorney Silverstein actually had the report in his possession before Mr. McCurdy's

---

[7] At least one of these attempts is dated July 26, 2011—within the one year statute of limitations. *Pet'r's Reply to Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* Attach. 2 (ECF No. 298).

trial in 2008.  *Id.*  In the Government's view, this makes the second supplemental pleading untimely.[8]

Second, the Government argues that the second supplemental pleading does not "relate back" to the original habeas petition, and so cannot be rescued from dismissal for untimeliness.  *Id.* at 6.  It cites *Ciampi*, 419 F.3d at 24, for the proposition that "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."  It points out that Mr. McCurdy's original ineffective assistance claims involve different witnesses and different types of evidence from those now raised in his second supplemental pleading. *Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* at 6.

Third, the Government argues that even if Mr. McCurdy's claims are timely or relate back to the original habeas petition, he is not entitled to relief under the two-part *Strickland* test.  *Id.* at 7-10.  As to objective unreasonableness, the

---

[8]    The Government also argues that various other "pleadings" are untimely under the statute of limitations; e.g., "the second motion to supplement that was filed on March 16, 2012 [and] the supplemental memorandum filed on February 12, 2013."  *Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* at 4 (ECF No. 296).  The March 16 filing, Mr. McCurdy's Motion for Leave to File Supplemental Pleading (ECF No. 262), is the first supplemental pleading—and, at any rate, was filed within one year or March 21, 2011, when the Supreme Court denied certiorari.  The February 12, 2013 filing, Mr. McCurdy's Petitioner's Supplemental Memorandum in re Government's Response to § 2255 Motion (ECF No. 294), was a supplemental memorandum of law, in the nature of a sur-reply.  It was not a "pleading" to the extent that it merely offered new legal argument on the existing grounds for relief.  To that extent, neither Rule 15 nor the limitations period of § 2255 applies to it.  However, the Court has only considered the February 12, 2013 brief to the extent that it makes legal arguments about any of Mr. McCurdy's six claimed grounds for relief; Mr. McCurdy may not introduce entirely new grounds for relief in a sur-reply.  *See United States v. Ailsworth*, 206 F. Supp. 2d 1148, 1155-56 (D. Kan. June 21, 2002) (denying a petitioner leave to insert a new ground for relief into a habeas petition in a late-filed supplemental brief).

Government notes that the subject matter on which Deputy Rolfe's testimony differs from the Curtis Report relates only to where Deputies Rolfe and Fuller were, and at what times, on the morning of the arrest. *Id.* at 7. The Government contends that this issue had no bearing at trial on the issue of whether Mr. McCurdy possessed a firearm. *Id.* The Government further notes that the only possible relevance could be to the second suppression hearing. *Id.* at n.7. In the Government's view, Attorney Silverstein's choice not to impeach Deputy Rolfe with this material at trial was reasonable because the Curtis Report also includes indications that Mr. McCurdy was arrested on domestic assault, was a drug addict, and had a knife during the alleged assault—information highly prejudicial to Mr. McCurdy. *Id.* at 7. Furthermore, because the impeachment would only go to a collateral matter, competent counsel could reasonably conclude that it would be inadmissible to impeach and that it would be a waste of time to offer it. *Id.* at 7-8.

As to the prejudice prong of *Strickland*, the Government contends that the Curtis Report, even if offered, would likely have been barred from admission to evidence because it was impeachment on a collateral matter; thus, there could be no prejudice to Mr. McCurdy by Attorney Silverstein failing to offer it. *Id.* at 9. Second, the Government claims that the evidence of Mr. McCurdy's guilt was "overwhelming," so failure to impeach Deputy Rolfe with the Curtis Report, even if it were admissible, would not change the outcome. *Id.* at 9-10. Finally, the Government observes that Attorney Silverstein did attempt to impeach Deputy

Rolfe with other documentary evidence, such as the dispatch log, Deputy Rolfe's own suppression hearing testimony, and one of Deputy Rolfe's affidavits. *Id.* at 10.

In rebuttal, Mr. McCurdy vigorously disputes the contention that he could have discovered the Curtis Report with due diligence more than one year before filing the second supplemental pleading. *Pet'r's Reply to Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* at 2 (ECF No. 298). First, he claims that Attorney Silverstein told him that there was no report from the Machias police department. *Id.* at 2-3. Second, he documents his efforts, beginning on June 27, 2011, to obtain reports from the Machias police. *Id.* at 3-6. This shows, in his view, that he exercised due diligence to locate the Curtis Report but was unable to. *Id.*

Next, Mr. McCurdy claims that Attorney Silverstein's failure to offer the Curtis Report to impeach Deputy Rolfe meets the *Strickland* test for ineffective assistance of counsel. *Id.* at 6-7. As to the prejudice prong, he insists that "[Deputy] Rolfe's entire testimony would have been called into question had Attorney Silverstein utilized the Machias Police Dept. report to impeach Rolfe's ability to recall the basic events at the traffic stop and at McCurdy's home." *Id.* at 6. He also disagrees that Attorney Silverstein made an objectively reasonable strategic choice to not offer the Curtis Report, mainly by presenting Mr. McCurdy's own interpretation of the facts. For instance, he disagrees that introducing the Curtis Report would have been dangerously prejudicial to his own cause: "The fact is that McCurdy was prescribed Oxycontin and Methadone on a monthly basis for over ten years because he suffers from life-altering pain due to reflex sympathetic

dystrophy." *Id.* at 7.  Further he insists that "[t]he fact that Government Witness, Steven John Cheney, had brutally assaulted a cripple would have, more likely than not, generated sympathy from the jury." *Id.* at 7.

### b.    Analysis

### i.    Timeliness of the Supplemental Pleading

Two events, relevant to the second supplemental pleading, may trigger the § 2255 statute of limitations to begin running: (1) the date on which the Supreme Court denies certiorari, § 2255(f)(1), and (2) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." § 2255(f)(4).  The Supreme Court denied certiorari on March 21, 2011, and Mr. McCurdy filed the second supplemental pleading on November 9, 2012.  More than one year separates these two events, and so the supplemental pleading can only be timely under § 2255(f) if Mr. McCurdy could not, by reasonable due diligence, have known of the facts "supporting the claim" before November 9, 2011.

The Government interprets § 2255(f)(4) as applying only to discovery of the *existence* of facts supporting the claim.  It views Mr. McCurdy's efforts to obtain Machias police reports as conclusive evidence that he knew of the existence of the Curtis Report as early as July 27, 2011, making the November 9, 2012 filing untimely.  However, this is too broad a view of the due diligence required by § 2255(f)(4).  The Government may not rely on the fact that Mr. McCurdy had a suspicion that a report existed that might have been relevant to his habeas petition, and made a broad (if ineffective) effort to obtain discovery from the Machias Police

Department. By its own language, subsection (f)(4) speaks of due diligence to discover the facts that give rise to a claim for relief, not exhaustive diligence. *See, e.g.*, *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008) ("[Section] 2255 'does not require the maximum feasible diligence, only due or reasonable, diligence.'") (quoting *Wims v. United States*, 225 F.3d 186 at 190 n.4 (2d Cir. 2000)); *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008) (same); *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) (same); *United States v. Patterson*, 227 F.3d 709, 712 (4th Cir. 2002) (same). If the rule were otherwise, a meritorious habeas petitioner could be stonewalled in his discovery efforts by uncooperative government agencies until after the limitations period passed, and those agencies could then hold up the petitioner's own defeated efforts to perform due diligence as proof that he has not done so.

Likewise, the mere fact that Attorney Silverstein had the Curtis Report in his possession before Mr. McCurdy's trial cannot dispose of the timeliness issue. Mr. McCurdy claims that Attorney Silverstein's representation of him was ineffective. Attorney Silverstein's knowledge of the Curtis Report—despite Mr. McCurdy's alleged queries as to its existence—is precisely the conduct at issue in the petition. If the Government's position were the rule, then a client, whose attorney ignored or concealed conclusive exculpatory evidence beyond the habeas limitations period, would not be able to obtain relief. Although the Court does not view the Curtis Report as conclusively exculpatory evidence, the analytical framework applied here must also apply to a petition with greater merit. An attorney's alleged possession

and concealment of evidence, put forth as ineffective assistance, cannot defeat the petitioner's due diligence to locate that very evidence for the purpose of the § 2255(f)(4) limitations period.

This does not mean, however, that a petitioner may be successful in a § 2255 petition by allegation alone. Here, Mr. McCurdy has not offered any evidence that he asked Mr. Silverstein for Machias police reports or that Attorney Silverstein denied possessing them. His assertions to this effect in his briefs lack any citation to record evidence. *See Mot. for Leave to File Second Supplemental Pleading* at 3 (ECF No. 277) (identifying no request made by Mr. McCurdy to Attorney Silverstein for Machias police reports); *Pet'r's Reply to Gov't's Resp. to Mot. for Leave to File Supplemental Peleading* at 2-3 (ECF No. 298) (claiming, without support, that Attorney Silverstein "repeatedly told Mr. McCurdy . . . [prior to trial] that there was no report from the Machias Police Department"). He claims—also without evidence—that he asked his brother whether there would be a separate report, and that this occurred at some time before June 27, 2011. *Pet'r's Reply to Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* at 3. But this date is also more than one year before he filed his second supplemental claim—November 9, 2012. If on June 27, 2011, Mr. McCurdy was certain that a Machias police report existed, due diligence required at least that he ask his attorney to give it to him—and, if Attorney Silverstein again denied that it existed, documenting that denial. Alternatively, he could have filed his second supplemental claim within one year of

June 27, 2011. Because he failed to demonstrate that he took either action, Mr. McCurdy's second supplemental pleading is untimely under § 2255(f)(4).

### ii.      "Relation Back" to the Original Petition

Because the second supplemental pleading was untimely, the Court must determine if it is "rescued" because it relates back to a claim in the original petition under Rule 15(c)(1)(B). *Mayle v. Felix*, 545 U.S. 644, 664 (2005). An amendment to a habeas petition "relates back" to the original if the claims relate to a "common core of operative facts." *Id.*

In *Mayle*, the Supreme Court held that an amendment to a habeas petition did not relate back when it stated a claim under a different Bill of Rights amendment from that claimed as a ground in the original petition. *Id.* at 648-49. The original petition claimed that admission of videotaped witness testimony violated the petitioner's rights under the Confrontation Clause of the Sixth Amendment. *Id.* at 650-51. The amended petition—filed after the habeas limitations period had expired—claimed that statements the defendant made to police during interrogation were the product of coercive police tactics, in violation of his Fifth Amendment right against self-incrimination. *Id.* In its analysis, the Court noted that under Habeas Rule 2(c), "[the defendant's] Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim." *Id.* at 661. The Court found no "common core of operative facts" between the alleged coercive police tactics and the Confrontation Clause violation, *id.* at 664, because the activities were "separate in both time and type." *Id.* at 657 (internal quotations omitted).

In *Ciampi*, 419 F.3d at 24, the First Circuit held that another amended petition did not "relate back" to the original. In that case, the original petition made two claims: first, that the district court did not adequately inform the defendant of the consequences of his guilty plea; and, second, that the defendant's attorney failed to investigate alleged misrepresentations in the indictment. *Id.* The amended petition also claimed ineffective assistance, now against the attorney, for failing to fully advise his then-client when the client pleaded guilty. *Id.* Although both the original and the amended petition claimed ineffective assistance of counsel, and both involved allegedly defective advice as to the consequences of a guilty plea, the First Circuit held that the events were "separate both in time and type." *Id.* The original claim regarding the guilty plea was against the district court, not the attorney; the amended claim was against the attorney, and the original claim against the attorney—failing to investigate the indictment—had nothing to do with deficient advice regarding the guilty plea. *Id.*

Likewise, the First Circuit recently held that a district court was within its discretion to deny a habeas petition amendment when both the original petition and the amended petition alleged ineffective assistance of counsel, both related to cross-examination of government witnesses. *Turner v. United States*, 699 F.3d 578, 585 (1st Cir. 2012). The original petition claimed that trial counsel was ineffective for eliciting testimony prejudicial to the defendant during cross-examination of a government witness. *Id.* The amended petition claimed that trial counsel was, in general, ineffective at cross-examining government witnesses. *Id.* The *Turner*

Court reasoned that, as in *Mayle*, this amounted to adding an unrelated ineffective assistance claim to a timely-filed ineffective assistance claim. *Id.*

*Mayle*, *Ciampi*, and particularly *Turner* teach that ineffective assistance claims must be stated with great particularity in the timely-filed habeas petition. *Turner* shows that it is within a district court's discretion to deny an untimely habeas amendment when both the original and amended petitions relate to the same lawyer, the same cross-examination, and the same witness. Following *Turner*, it is within this Court's discretion to deny a habeas amendment for ineffective impeachment of two different witnesses—Mr. Cheney and Deputy Rolfe—based on two different types of impeaching evidence—a document and a taped telephone call.

Mr. McCurdy was on notice of both the Curtis Report and the taped calls within the habeas limitation period, but he did not make his claim about the Curtis Report until more than a year after he learned of its existence. That is enough for the Court to disallow Mr. McCurdy to amend the petition to state a sixth ground for relief.

### iii. Ineffective Assistance

Because the second supplemental petition was untimely, the Court need not reach the merits Mr. McCurdy's claim that Attorney Silverstein was ineffective for deciding not to use the Curtis Report to impeach Deputy Rolfe. However, in the interest of completeness, the Court will do so. Even if the second supplemental pleading were timely, Attorney Silverstein's choice fails neither of the *Strickland* factors.

First, choosing not to use the Curtis Report did not fall short of any objective standard of reasonableness. The Government is correct that this document would not have been admissible to impeach Deputy Rolfe at trial because it only relates to collateral issues. Nothing about the locations of Deputies Rolfe and Fuller on the morning of the arrest has anything to do with whether Mr. McCurdy was a felon and possessed a firearm. Attorney Silverstein was free to ask Deputy Rolfe about inconsistencies in his prior testimony for the purpose of impeaching him—and in fact actually did so—but he would not have been allowed to impeach Deputy Rolfe on a collateral matter. *United States v. Beauchamp*, 986 F.2d 1, 3 (1st Cir. 1993).

Unlike at a trial, Attorney Silverstein could have impeached Deputy Rolfe with the Curtis Report at the suppression hearing because the Federal Rules of Evidence were not applicable. *Matlock*, 415 U.S. at 172-74. However, Attorney Silverstein did offer other evidence to impeach Deputy Rolfe at that hearing, *Suppression Hearing* at 82-93, and he may reasonably have concluded that the minor variations in the descriptions of who was where and at what times would not have warranted their introduction. He could also reasonably have concluded that other impeachment material was more important and relevant to the merits of the suppression motion, and that he would hurt, rather than help, his case by dwelling on minutiae. The Court is required to afford great deference to the tactical choices of counsel when evaluating the first prong of the *Strickland* test, and the Court does not conclude here that Attorney Silverstein fell below that standard.

Furthermore, even if failing to impeach Deputy Rolfe with Officer Curtis's slightly conflicting report were objectively unreasonable, Mr. McCurdy would still not have been prejudiced under the second prong of the *Strickland* test. The report would have been one small piece of cumulative evidence among many that the Court considered in making its credibility determinations at the suppression hearing; it is highly unlikely to have changed the outcome. The plain fact is that at trial, the evidence that Mr. McCurdy possessed a firearm was overwhelming. *Strickland* requires that it be more likely than not that counsel's errors would have changed the outcome for the defendant. *González-Soberal*, 244 F.3d at 277, 279. That is not the case here.

In conclusion, the untimely-filed sixth ground for habeas relief fails on its merits to state a *Strickland* claim of ineffective assistance of counsel.

### 7. Conclusion as to the Motion to Vacate, Set Aside, or Correct Sentence, As Amended

None of the petition's allegations of constitutional error in the investigation, trial, or conviction of Mark McCurdy has merit under the law. Attorney Silverstein provided Mr. McCurdy with a vigorous defense, contesting numerous issues, in particular the Fourth Amendment claims that formed the basis of his two suppression hearings. Having presided over the case, including the trial, the Court readily concludes that Attorney Silverstein's representation was not merely constitutionally sufficient, but robust. Mr. McCurdy's strenuously expressed contentions notwithstanding, his allegations of prosecutorial misconduct are, at

best, flimsy and speculative.  The Court denies Mr. McCurdy's Motion to Vacate, Set Aside, or Correct Sentence, as amended.

### B.      The Motion for Leave to File Discovery Request

Mr. McCurdy's Second Motion for Discovery relates entirely to Machias police department records, but it is directed at the United States.  *See Second Mot. for Disc.* (ECF No. 299-1) (Mar. 21, 2013).  The Government contends, in its opposition, that it does not have any such records, and that they are exclusively within the control of the Machias Police Department.  *Gov't's Objection to Def.'s Second Mot. for Disc.* (ECF No. 300).  Furthermore, it appears that Mr. McCurdy filed a request under the Maine Freedom of Information Act to compel this production, which is currently under appeal.  *Pet'r's Reply to Gov't's Resp. to Mot. for Leave to File Supplemental Pleading* at ¶ 3(u).

Mr. McCurdy's motion fails for three reasons.  First, the Court should not order the Government to produce a document it does not possess, and there is no evidence that the United States Government possesses the Machias Police Department reports that Mr. McCurdy is demanding.  Next, Mr. McCurdy has properly chosen a state forum to pursue his request from a Maine town and the question of whether to grant his demand for those records is pending in state court. In the interest of comity, it would be inappropriate for this Court to order production of these documents while the Maine courts are considering Mr. McCurdy's state discovery request.  Finally, the state court response may clarify Mr. McCurdy's entitlement to those documents and thereby render the federal

discovery request moot. Therefore, the Court dismisses the motion for leave to request discovery.

## C.     Ex Parte Application for Subpoena Duces Tecum

On May 10, 2013, Mr. McCurdy filed an ex parte application for a subpoena duces tecum

> to compel the Washington County Sheriff's Department to produce former Deputy John Rolfe's personnel file, and any other documents concerning the following: the evaluation of Rolfe's performance of his duties, investigations or disciplinary actions taken or contemplated against Rolfe, and any assessments concerning Rolfe's credibility, strengths and/or weaknesses as a witness and/or possible effects on a judge or jury.

*Ex Parte Appl. for Subpoena Duces Tecum* (ECF No. 303). The Court denies this motion. The Court refuses to enable Mr. McCurdy's vendetta against Deputy Rolfe.

## D.     Motion for Judgment on the Pleadings

On September 16, 2013, Mr. McCurdy filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Pet'r's Mot. for J. on the Pleadings* (ECF No. 304). In the alternative, he has asked for an evidentiary hearing. *Id.* at 3. The Court dismisses the motion. Some dispositive motion practices are "commonly used in habeas corpus proceedings." *Evans v. Warden, N.H. State Prison*, No. 08-cv-105-JD, 2010 U.S. Dist. LEXIS 54349, *3-4 (D.N.H. June 2, 2010); FED. R. CIV. P. 81(a)(4)(A); Habeas Rule 12. Although unusual, it may be that a § 2255 petition could be resolved on a motion for judgment on the pleadings.

Thus, although a potentially appropriate procedural vehicle, Mr. McCurdy's motion for judgment on the pleadings and demand for an evidentiary hearing add

nothing to the case. In this decision, the Court reached the merits of Mr. McCurdy's § 2255 petition and his request for an evidentiary hearing. The Court views Mr. McCurdy's newest motion and his reiterated request for an evidentiary hearing as a way to prod the Court to make a decision and to vent his frustration at the delay. The Court regrets the length of time it has taken to rule on these motions; however, in its defense, Mr. McCurdy's case is not the only one on the docket and the issues that he raised deserved careful and detailed attention.

## IV. CONCLUSION

Thus:

1) The Court DENIES Mark McCurdy's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 240);

2) The Court DENIES Mark McCurdy's Motion for Leave to File Discovery Request (ECF No. 299);

3) The Court UNSEALS and DENIES Mark McCurdy's Ex Parte Application for Subpoena Duces Tecum (ECF No. 303); and

4) The Court DISMISSES Mark McCurdy's Motion for Judgment on the Pleadings (ECF No. 304)

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2013